U. S. DISTRICT COURT - DE
MISC. CASE # __06-34__

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION



FILED

FEB 2 3 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

SECURITIES AND EXCHANGE
COMMISSION,

          **Plaintiff,**

**v.**

**EDWARD S. DIGGES, JR.; NEXSTAR
COMMUNICATIONS, LLC;
TMT EQUIPMENT COMPANY, LLC;
TMT MANAGEMENT GROUP, LLC;
POSA, LLC; POSA TMT, LLC;
TELEVEST COMMUNICATIONS, LLC;
TELEVEST GROUP, LLC; and SPIN
DRIFT, LLC,**

          **Defendants.**

**CIVIL ACTION FILE
NO.
6:06-cv-137-Orl- 19KRS**

I certify the foregoing to be a true
and correct copy of the original.
SHERYL L. LOESCH, Clerk
United States District Court
Middle District of Florida

By: _____ Deputy Clerk

## ORDER GRANTING PERMANENT INJUNCTION,
## FREEZING ASSETS, APPOINTING A RECEIVER AND ORDERING
## OTHER ANCILLARY RELIEF

The Plaintiff, Securities and Exchange Commission ("Commission") having

filed a Complaint and Defendants Edward S. Digges, Jr.; Nexstar Communications,

LLC; TMT Equipment Company, LLC; TMT Management Group, LLC; POSA,

LLC; POSA TMT, LLC; Televest Communications, LLC; Televest Group, LLC;

and Spin Drift, LLC, (collectively "Defendants") having entered general appearances; consented to the Court's jurisdiction over Defendants and the subject matter of this action; consented to entry of this Order Granting Permanent Injunction, Freezing Assets, Appointing a Receiver and Ordering Other Ancillary Relief ("Order") without admitting or denying the allegations of the Complaint (except as to jurisdiction); waived findings of fact and conclusions of law with respect to this Order; and waived any right to appeal from this Order :

## I.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that defendants Edward S. Digges, Jr., Nexstar Communications, LLC, TMT Equipment Company, LLC, TMT Management Group, LLC, POSA, LLC, and POSA TMT, LLC, their agents, servants, employees, attorneys, assigns, and all persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise are permanently restrained and enjoined from directly or indirectly,

    (a)    making use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or otherwise;

(b)    carrying securities or causing such securities to be carried through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or for delivery after sale; and

(c)    making use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy securities, through the use or medium of any prospectus or otherwise, without a registration statement having been filed with the Commission as to such securities,

in violation of Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act")[15 U.S.C. §§ 77e(a) and 77e(c)].

## II.

**IT IS FURTHER ORDERED** that defendants Edward S. Digges, Jr., Nexstar Communications, LLC, TMT Equipment Company, LLC, TMT Management Group, LLC, POSA, LLC, and POSA TMT, LLC, and their agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this Order, by personal service or otherwise, and each of them, be and hereby are permanently enjoined and restrained from violating, directly or indirectly, Section 17(a) of the Securities Act

3

[15 U.S.C. § 77q(a)], by, through the use of any means or instruments of

transportation or communication in interstate commerce or by the use of the mails:

    a.    employing any device, scheme or artifice to defraud;

    b.    obtaining money or property by means of any untrue statement of a

material fact or any omission to state a material fact necessary in order to make

the statements made, in the light of the circumstances under which they were

made, not misleading; or

    c.    engaging in any transaction, practice, or course of business which

operates or would operate as a fraud or deceit upon the purchaser, in the offer or

sale of any security.

## III.

IT IS FURTHER ORDERED that Defendants, and their agents, servants,

employees, and attorneys, and those persons in active concert or participation with

them who receive actual notice of this Final Judgment, by personal service or

otherwise, and each of them, be and hereby are permanently enjoined and

restrained from violating, directly or indirectly, or aiding and abetting violations

of, Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15

U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], by, through

the use of any means or instrumentality of interstate commerce or of the mails or of

4

any facility of any national securities exchange:

    a.    employing any device, scheme or artifice to defraud;

    b.    making any untrue statement of a material fact or omitting to state a

material fact necessary in order to make the statements made, in light of the

circumstances under which they were made, not misleading; or

    c.    engaging in any act, practice, or course of business which operates or

would operate as a fraud or deceit upon any person, in connection with the

purchase or sale of any security.

## IV.

IT IS FURTHER ORDERED that, pending further order of the Court, all

assets of, or under the control of, Defendants, are frozen, except as otherwise

specified herein. Defendants, their officers, agents, servants, employees, attorneys,

and all persons in active concert or participation with them, except any trustee,

receiver or special fiscal agent appointed by this Court, be, and hereby are,

restrained from, directly and indirectly, transferring, setting off, receiving,

changing, selling, pledging, assigning, liquidating or otherwise disposing of or

withdrawing any assets and property owned by, controlled by, or in the possession

of said defendant. This Court further enjoins any disbursement by Defendants, their

agents, representatives, employees and officers and all persons acting in concert or

participation with them, whatever business names they may operate under, of any

proceeds derived from the securities offerings alleged in the Commission's

complaint. The freeze shall include but not be limited to those funds located in any

bank accounts, brokerage accounts, or any other accounts or property of

Defendants.

**V.**

IT IS FURTHER ORDERED that the Commission may take expedited

discovery as follows:

A.    The Commission may take depositions upon oral examination subject

to ten days notice prior to expiration of 30 days after service of the Summons and

Complaint, pursuant to Rule 30(a) of the Federal Rules of Civil Procedure; and

B.    Pursuant to Rule 34 of the Federal Rules of Civil Procedure, upon

request of the Commission, Defendants shall produce all documents within ten

days of service of such request;

All written responses to the Commission's requests for discovery under the

Federal Rules of Civil Procedure shall be delivered to the Commission at 3475

Lenox Road N.E., Suite 1000, Atlanta, Georgia 30326-1232, or such other place as

counsel for the Commission may direct, by the most expeditious means available.

6

## VI.

Upon motion of the Commission, the Court shall determine whether it is appropriate to order disgorgement of ill-gotten gains and/or a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] against Defendants and, if so, the amount(s) of the disgorgement and/or civil penalty. If disgorgement is ordered, Defendants shall pay prejudgment interest thereon, based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2).

## VII.

IT IS FURTHER ORDERED that James D. Silver, Esquire, be and hereby is appointed as Receiver, without bond, for the estates of Nexstar Communications, LLC; TMT Equipment Company, LLC; TMT Management Group, LLC; POSA, LLC; POSA TMT, LLC; Televest Communications, LLC; Televest Group, LLC; and Spin Drift, LLC, unless and until the Court orders otherwise. The estates for which Mr. Silver is hereby appointed Receiver are hereinafter referred to as the "Receiver Estate." The Receiver Estate shall include the above-named defendants and any entities owned by them.

## VIII.

IT IS FURTHER ORDERED that the Receiver shall have and possess all

powers and rights to efficiently administer and manage the Receiver Estate,

including but not limited to the power:

A.    to take custody, control and possession of all the funds, property,

premises, leases, and other assets of or in the possession or under the

direct or indirect control of the Receiver Estate, to manage, control,

operate and maintain the Receiver Estate, to use income, earnings,

rents and profits of the Receiver Estate, with full power to sue for and

collect, recover, receive and take into possession all goods, chattels,

rights, credits, monies, effects, lands, books and records of accounts

and other papers;

B.    to sell, rent, lease or otherwise hypothecate or dispose of the assets of

the Receiver Estate;

C.    to pursue, resist and defend all suits, actions, claims and demands

which may now be pending or which may be brought by or asserted

against the Receiver Estate;

D.    to make such payments and disbursements from the funds so taken into

his custody, control and possession or thereafter received, and to incur

8

such expenses as may be necessary or advisable in the ordinary course
of business in discharging the duties of Receiver;

E.    to open bank accounts in the name of the Receiver on behalf of the
      Receiver Estate;

F.    to engage and employ others (without Court approval), including but
      not limited to consultants, attorneys, accountants, experts and
      employees of a firm owned by the Receiver, to assist him in his duties,
      except that any payment to others for their services shall be subject to
      Court approval;

G.    to take any action which could be taken by the officers, directors,
      partners and trustees of the Receiver Estate;

H.    to suspend, terminate or grant a leave of absence to any employees of
      the Receiver Estate; and

I.    to take such other action as may be approved by this Court.

## IX.

IT IS FURTHER ORDERED that no person holding or claiming any position
of any sort with the Receiver Estate shall possess any authority to act by or on
behalf of any of the Receiver Estate, except as authorized by the Receiver. No
shareholders, officers, directors, partners or trustees of the corporations or other

9

entities that make up the Receiver Estate shall exercise any of their rights or powers

with respect to the Receiver Estate until further order of the Court. With respect to

the asset freeze set forth herein, the Receiver shall be authorized, but not required,

to administer, manage, and direct the marshaling, disbursement and/or transfer of

monies or other assets held by third parties that are subject to the freeze. The

Receiver may, in the reasonable exercise of his discretion, authorize the release, use

or segregation of proceeds held by third parties if he believes such action is

necessary to preserve the Receiver Estate.

## X.

IT IS FURTHER ORDERED that all persons receiving notice of this order

by personal service or otherwise, are hereby restrained and enjoined from disposing,

transferring, exchanging, assigning or in any way conveying any property or assets

of the Receiver Estate and from the transaction of any business of the Receiver

Estate except with the approval of the Receiver.

## XI.

IT IS FURTHER ORDERED that, all persons acting for or on behalf of the

Receiver Estate, and all persons receiving notice of this order by personal service or

otherwise, having possession of the property, business, books, records, accounts or

assets of the Receiver Estate are hereby directed to deliver the same to the Receiver,

his agents and/or employees.

## XII.

IT IS FURTHER ORDERED that the Defendants, their agents, servants,

employees, nominees, attorneys and entities under their direct or indirect control

shall cooperate with and assist the Receiver and shall take no action, directly or

indirectly, to hinder, obstruct, or otherwise interfere with the Receiver, in the

performance of the Receiver's duties. This section shall not be construed to waive

any privileges of any person, Constitutional or otherwise.

## XIII.

IT IS FURTHER ORDERED that any brokerage institution, financial

institution, bank, savings and loan, mutual fund, or any other person, partnership, or

corporation maintaining or having custody or control of any brokerage or deposit

account or other assets of any of the Receiver Estate or under their control, and that

receives actual notice of this order by personal service, facsimile transmission or

otherwise shall, within five (5) business days of receipt of that notice, file with the

Court and serve on the Receiver and counsel for the Commission a certified

statement setting forth, with respect to each such account or other asset, the balance

in the account or description of the assets as of the close of business on the date of

receipt of the notice.

## XIV.

IT IS FURTHER ORDERED that the Receiver shall perform an accounting of the defendants' offering of securities offerings as outlined in the Commission's complaint including but not limited to the defendants' solicitation, receipt, disposition and use of the proceeds from such offerings.

## XV.

IT IS FURTHER ORDERED that the Receiver shall have the power to compel, including by subpoena, the appearance and testimony of all persons and the production of the originals of any records, of any sort whatsoever, within the possession, custody or control of any person, in performing the Receiver's duties hereunder. The Receiver's authority under this paragraph shall not be construed to require the waiver by any person of any validly asserted privilege.

## XVI.

IT IS FURTHER ORDERED that, on fifteen (15) days written notice from the Receiver, Defendants shall produce to the Receiver the originals of any records in his custody, possession or control relating to the financial affairs, from January 1, 2003 through the present, of Defendants Nexstar Communications, LLC; TMT Equipment Company, LLC; TMT Management Group, LLC; POSA, LLC; POSA

12

TMT, LLC; Televest Communications, LLC; Televest Group, LLC; and Spin
Drift, LLC.

## XVII.

IT IS FURTHER ORDERED that the Receiver may investigate in connection
with discovering additional information as it relates to activities of the Receiver
Estate. The Receiver shall have the authority to investigate regarding such related
parties and employees prior to filing any litigation, and shall have the express
authority to order consumer reports in the course of any such investigation.

## XVIII.

IT IS FURTHER ORDERED that the Receiver and any person engaged or
employed by the Receiver, are entitled to reasonable compensation from the assets
of the Receiver Estate, subject to the prior approval of the Court.

## XIX.

IT IS FURTHER ORDERED that the Receiver shall be empowered, but is
not required, to file voluntary petitions for relief under Title 11 of the United States
Code (the Bankruptcy Code) for the Receiver Estate. If a bankruptcy petition is
filed, the Receiver shall become, and shall be empowered to operate the Receiver
Estate as a debtor in possession. The Receiver shall have all of the powers and
duties as provided a debtor in possession under the Bankruptcy Code to the

13

exclusion of any other person or entity.

## XX.

IT IS FURTHER ORDERED that the Receiver, should the Receiver elect to file petitions under Title 11 of the United States Code for any of the Receiver Estate, shall have 15 days from the date of such filing to file with the Bankruptcy Court any lists or schedules required to be filed with such petitions, this Court recognizing that the Receiver will require time to assemble such data for filing.

## XXI.

IT IS FURTHER ORDERED that except by leave of this Court all creditors and other persons seeking money damages or other relief from the Receiver Estate and all others acting on behalf of any such creditors and other persons, including sheriffs, marshals, and all officers and deputies, and their respective attorneys, servants, agents and employees, are, until further order of this Court, hereby stayed and restrained from doing anything to interfere with the possession, recovery or management by the Receiver of the property and assets owned, controlled, belonging to, or in the possession of the Receiver Estate, or to interfere with the Receiver in any manner during the pendency of this proceeding.

## XXII.

IT IS FURTHER ORDERED that the Receiver is authorized to communicate

14

with all such persons as he deems appropriate to inform them of the status of this matter and the financial condition of the Receiver Estate.

## XXIII.

IT IS FURTHER ORDERED that the Receiver is authorized to record this Order with government offices and to serve this Order on any person as the Receiver deems appropriate in furtherance of the Receiver's responsibilities in this matter.

## XXIV.

IT IS FURTHER ORDERED that the Receiver shall promptly notify the Court and counsel for the Commission of any failure or apparent failure of the defendants to comply in any way with the terms of this Order.

## XXV.

IT IS FURTHER ORDERED that, except for an act of gross negligence or intentional misconduct, the Receiver and all persons engaged or employed by the Receiver shall not be liable for any loss or damage incurred by the defendants, or any other person, by reason of any act performed or omitted to be performed by them in connection with the discharge of their duties and responsibilities in this matter.

15

## XVI.

IT IS FURTHER ORDERED that the Defendants' Consent are incorporated

herein with the same force and effect as if fully set forth herein, and that

Defendants shall comply with all of the undertakings and agreements set forth

therein.

## XXVII.

IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this

matter for all purposes.

Dated: _February 14,_____ _____, 2006 at 4:43 p.m.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

16

ORIGINAL



FILED

FEB 2 3 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                              Plaintiff,<br><br>v.<br><br>EDWARD S. DIGGES, JR.; NEXSTAR COMMUNICATIONS, LLC; TMT EQUIPMENT COMPANY, LLC; TMT MANAGEMENT GROUP, LLC; POSA, LLC; POSA TMT, LLC; TELEVEST COMMUNICATIONS, LLC; TELEVEST GROUP, LLC; and SPIN DRIFT, LLC,<br><br>                              Defendants. | U. S. DISTRICT COURT - DE<br>MISC. CASE # 06-34<br><br><br>CIVIL ACTION FILE<br>NO. 6:06-cv-137-OLL-PKRS<br><br><br>I certify the foregoing to be a true and correct copy of the original.<br>SHERYL L. LOESCH, Clerk<br>United States District Court<br>Middle District of Florida<br><br>By _____<br>        Deputy Clerk |

## Complaint For Emergency Injunctive And Other Relief

The plaintiff, Securities and Exchange Commission ("Commission" or the "Plaintiff"), files this complaint and alleges the following:

### Summary

1.      Between April 2003 and the present, Edward S. Digges, Jr.

("Digges"), a recidivist violator, and various entities controlled by him, have

fraudulently sold securities in the form of investments in "point-of-sale" credit

card terminals coupled with lease agreements. The terminals are typically placed

at retail establishments, and used by merchants to swipe customer credit, debit,

ATM or gift cards. The terminals are sold to investors by an entity controlled by

Digges and leased back from the investors by another entity controlled by Digges.

The investors are promised a fixed rate of return equivalent to 12 percent per year.

2.      Entities controlled by Digges have been selling the terminals for

$5,000 each, promising to pay the investors a 12 percent annual return for five

years and offers to repurchase the terminals for the full $5,000 purchase price after

five years. Digges has raised at least $15 million from 278 investors, many of

whom are elderly.

3.      Digges has concealed from investors his involvement in the program.

The sales materials used to sell the investment falsely portray to investors that the

venture is managed by individuals who, in fact, have only nominal roles. Digges

has concealed his involvement because he has a prior conviction for

misappropriating client assets, and has been disbarred.

4.      Digges has misrepresented that the lease payments are "assured," in part through a "reserve fund" that purportedly covers six months of the monthly lease obligations. Digges has also misrepresented that his program maintains a "sinking fund" to fund the eventual repurchase of the terminals.

5.      In fact, Digges' program does not maintain any "sinking fund" or "reserve fund." Since June 2005, Digges' program has run a monthly deficit of about $125,000, which Digges has purportedly satisfied through "capital infusions" from his personal assets. The entities contracting with investors do not have assets with which to repurchase the terminals at the end of the five year period.

6.      Digges has also failed to disclose that, since April 2003, three state securities commissions have issued orders finding that one or more of the entities controlled by Digges have violated state securities laws by offering the same securities at issue in this matter.

7.      During the course of the fraud, Digges has sold the terminals through one or more of the following entities that he controls:  Nexstar Communications, LLC; TMT Management Group, LLC; and TMT Equipment Company, LLC; and

leased the terminals back through POSA, LLC and POSA TMT, LLC, which he also owns or controls.

8.     During the course of the fraud, Digges has used Spin Drift, LLC; Televest Communications, LLC; and Televest Group, LLC as conduits to funnel funds to and from investors.

9.     By virtue of this conduct, Defendants have engaged and, unless enjoined, will continue to engage, in violations of, or conduct that aids and abets violations of, Sections 5(a), 5(c) and 17(a) of the Securities Act of 1933 ("Securities Act")[15 15 U.S.C. 77e(a), 77e(c) and 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act")[15 U.S.C. 78j(b)], and Rule 10b-5 promulgated thereunder,[17 C.F.R. 240.10b-5].

### Jurisdiction And Venue

10.     The Commission brings this action pursuant to Sections 20(b), (c) and (d) of the Securities Act [15 U.S.C. 77t(b)-(d)] and Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. 78u(d)-(e)], to enjoin the defendants from engaging in the transactions, acts, practices and courses of business alleged in this Complaint, and transactions, acts, practices and courses of business of similar purport and object, for disgorgement of ill-gotten gains, civil penalties and other relief.

11.    This Court has jurisdiction over this action pursuant to Sections

20(b), 20(d) and 22(a) of the Securities Act [15 U.S.C. 77t(b), 77t(d) and 77v(a)]

and Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. 78u(d), 78u(e)

and 78aa].

12.    The Defendants, directly and indirectly, have made use of the mails,

the means and instrumentalities of interstate commerce, and the means and

instruments of transportation and communication in interstate commerce, in

connection with the transactions, acts, practices, and courses of business alleged in

this Complaint.

13.    Venue lies in this Court pursuant to Section 22(a) of the Securities

Act [15 U.S.C. 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. 78aa],

because certain of the transactions, acts, practices and courses of business

constituting violations of the Securities Act and Exchange Act have occurred

within the Middle District of Florida.  One or more of the Defendants maintains a

principal place of business in Orlando and the securities have been sold to

investors in this district.

## **The Defendants**

14.    Edward S. Digges, Jr., age 58, is the President, Chief Operating Officer, and part owner of Televest Communications, LLC, and Televest Group, LLC, which in turn hold controlling interests in the remainder of the Digges Entities. Digges controls the daily activities of all of the Digges Entities.

15.    Nexstar Communications, LLC ("Nexstar") is a Maryland limited liability company controlled by Digges. Between approximately April 2003 and December 2003, Digges offered and sold terminals to investors through Nexstar.

16.    TMT Equipment Company, LLC ("TMT Equipment") is a Delaware limited liability company with its principle place of business in Orlando, Florida and is controlled by Digges. In or around December 2003, Digges began using TMT Equipment to sell terminals to investors.

17.    TMT Management Group, LLC ("TMT Management") is a Delaware limited liability company with its principle place of business in Orlando, Florida and is controlled by Digges. In or around December 2003, Digges began using TMT Management to sell terminals to investors.

18.   POSA, LLC ("POSA") is a Maryland limited liability company controlled by Digges.  Between approximately April 2003 and December 2003, Digges used POSA, LLC to lease back from investors the terminals sold through Nexstar.

19.   POSA TMT, LLC ("POSA TMT") is a Delaware limited liability company controlled by Digges with its principal place of business in Orlando, Florida.  In or around December 2003, Digges began using POSA/TMT to lease back from investors those terminals sold through either TMT Equipment or TMT Management.

20.   Televest Communications, LLC ("Televest Communications") is a Delaware limited liability company controlled by Digges and is the parent company of Nexstar.  Throughout the scheme Digges used Televest Communications to funnel money to or from investors.

21.   Televest Group, LLC ("Televest Group") is a Delaware limited liability company controlled by Digges and is the parent company of TMT Equipment and TMT Management.  Throughout the scheme Digges used Televest Group to funnel money to or from investors.

22.    Spin Drift, LLC ("Spin Drift") is a Delaware limited liability company controlled by Digges.   Spin Drift received a portion of the proceeds raised from investors.  Throughout the scheme, Digges used Spin Drift to funnel money to or from investors.[1]

## FACTS

### Digges' Investment Program in Point-of-Sale Terminals

23.    From at least April 2003 through the present, Defendants have sold more than $15 million of investments in point-of-sale terminals to approximately 278 investors throughout the United States.

24.    Point-of-sale terminals are instruments typically placed at retail establishments, which merchants use to swipe customer credit, debit, ATM or gift cards. The terminals verify whether a customer has sufficient available credit or funds to make a particular purchase.

25.    The investments are structured so that an investor purchases terminals from one of the Digges Entities for $5,000 and simultaneously enters into a leaseback agreement with another Digges Entity.

---

[1]    Nexstar; TMT Management; TMT Equipment;  POSA;  POSA TMT; Spin Drift; Televest Communications; and Televest Group are hereafter collectively

Footnote continued on next page

26.    Under the leaseback agreement, the investor is to receive monthly lease payments of $50, representing a 12% annual return, for five years.

27.    The defendants represent that lease payment will purportedly come from revenues generated whenever merchants use the terminals. The lease payment to a particular investor is purportedly paid from the revenues of the leasing entity, and is not dependent upon the performance of a particular terminal. For example, Nexstar's literature represented that, for every transaction a merchant processed through a Nexstar terminal, Nexstar would earn 5¢ for every debit card transaction and 2.5¢ for every credit card transaction. Investors have no role in the management of their terminal. All managerial and functional responsibilities are handled by the entity leasing the terminal from the investors or others acting at the entity's behest.

28.    The leaseback arrangement obligated the Digges Entity leasing the terminal to repurchase the terminal for $5,000 at the end of the lease.

---

referred to as "the Digges Entities."

29.    Digges has been selling these investments through a network of sales agents—principally insurance agents, financial planners, or certified public accountants—that stretches throughout the United States, but is concentrated primarily in Texas, Michigan, and Florida.

30.    This network is structured like a pyramid with sales agents who sell Digges' investment directly to investors and other sales agents who have developed their own "downstream" network of sales agents.

31.    Investors in Digges' program pay total sales commissions ranging from 12 to 18 percent of their total investment, which is then apportioned as compensation to sales agents "upstream" through the network.

32.    Between April 2003 and December 2003, Digges offered and sold the terminals through Nexstar, and used POSA to lease the terminals back from investors.

33.    During this period, investors were required to purchase a minimum of two terminals for $5,000 each.

34.    Upon payment of the funds, investors entered into three agreements: (i) a terminal purchase agreement between the investor and Nexstar; (ii) a lease

agreement between the investor and POSA, requiring POSA to pay the investor
$50 per month per terminal in exchange for placing, operating, and maintaining
the terminal in a retail store; and (iii) an "option to sell agreement" that gave the
investor the option to require POSA at the end of five years to repurchase the
terminal from the investor for its full original purchase price of $5,000.

35.    Investors were given the option, and provided the forms, to purchase
terminals in an Individual Retirement Account ("IRA") and, in the event this
option was chosen, referred to a third party IRA administrator located in California
to service their account.

36.    Although investors were also technically given the option to buy and
operate the terminals themselves, the alternative which was chosen by the vast
majority, if not all, of the investors was to lease the terminals to POSA in
exchange for monthly lease payments.

37.    While using Nexstar to sell the terminals and POSA to leaseback the
terminals, Digges used Televest Communications as a conduit to funnel proceeds
to and from investors.

38.    To promote sales of his investment program, Digges had marketing

materials prepared that described the terminals and his program and arranged for

presentations to sales agents at Nexstar's offices in Orlando, Florida. Digges

placed other marketing materials on a website.

39.    Digges also prepared and filed disclosure statements with the Federal

Trade Commission ("FTC") and various state agencies.

40.    Along with his marketing materials, these disclosure statements, or

portions of them, were provided to sales agents for their training and eventual use

as promotional materials for investors.

41.    On November 17, 2003, the state securities commissions of Maryland

and Pennsylvania issued against Nexstar and POSA Summary Orders to Cease and

Desist ("Summary Orders") from offering and selling terminal investments in those

respective states. The Maryland order found that Digges' offering involved fraud.

42.    Thereafter, from around January 2004 through the present, Digges

continued to offer these investments, but began using TMT Management and TMT

Equipment to sell the terminals, and POSA TMT to leaseback the terminals from

investors.

43.    When Digges began selling terminals through TMT Management and
TMT Equipment, he used Spin Drift and Televest Group to transfer funds among
the various Digges Entities.

44.    Digges also used Televest Group to fund lease payments to the
investors and used Spin Drift to repurchase terminals from certain investors.

45.    Despite using different entities, Digges' investment program
remained essentially unchanged, except that Digges increased the minimum
investment from two terminals to five.

46.    There has been no registration statement filed with the Commission
with respect to the offering of the securities described herein.

## Misrepresentations and Omissions

47.    The offering materials prepared by Digges and distributed to the sales
force and to investors ("offering materials") represent that the lease payments are
"assured." In fact, the investment program has run a deficit since at least January
2004 and does not have the assets to pay the promised lease payments or to
repurchase the terminals.

-13-

48.    That deficit has reached $125,000 per month since June 2005, a

shortfall that Digges has covered with "capital infusions" from his personal assets.

49.    Digges' marketing materials represented that the obligations of POSA

to pay monthly lease payments were "assured" through the creation of a "reserve

fund." Specifically, the materials state that "[t]o help insure that the monthly lease

payments are available as due to our lessors, POSA maintains a six (6) month cash

reserve fund for each and every lease it maintains."

50.    Digges and employees of his entities have also represented that his

program maintains a "reserve fund" or "sinking fund" to assure the repurchase of

terminals. For example, in or around 2003, Digges told Christopher Morris, a sales

agent, that the sinking fund for terminal repurchase was maintained at Fidelity

Investments and, with each terminal purchase, funded with a $1,000 contribution

from Digges Entities and thereafter $75 per month during the term of the five year

lease.

51.    In addition, Chris Haug, the chief financial officer of Nexstar,

represented in a January 29, 2004 letter to Jack Brown, another sales agent selling

Digges' investment program, that a reserve fund would be maintained.

-14-

52.    Investors were also told that the program maintained a reserve fund to cover the lease payments and or the repurchase of terminals.

53.    In truth, neither Digges nor any of the Digges Entities have established a reserve fund or sinking fund to cover the lease payments or the repurchase of terminals.

54.    Digges' offering materials also tout the experience, expertise and integrity of management, representing that, within the last seven years, management has no criminal or civil liability involving fraud.

55.    The offering materials describe persons as managing the entities who in fact have only nominal roles. The offering materials conceal Digges' substantial and controlling role in the program and do not disclose Digges' 1990 mail fraud conviction, which arose from his over-billing of a client.

56.    In that matter, Digges was sentenced to 30 months of incarceration and ordered to pay $1 million in restitution to his former client.

57.    Digges' offering materials also fail to disclose the 1989 civil judgment against Digges for fraud, deceit and breach of contract. That judgment

ordered Digges and his law firm, jointly and severally, to pay $3,634,801.92,

including $510,386.99 in prejudgment interest.

58.    Nor do the offering materials disclose that Digges, formerly a lawyer

licensed in Maryland, was disbarred following his felony conviction.

59.    Prospective investors are also not advised, through the offering

materials or otherwise, of the existence or the magnitude of sales commissions that

investors are paying to sales agents on terminal investments, i.e., 12 to 18 percent

of their total invested funds.

60.    Since at least December 2003, Digges has not disclosed to investors

that the state securities commissions of Maryland, Pennsylvania, and Ohio have

issued orders finding that one or more Digges Entities have violated state

securities laws by engaging in the offering.

61.    Nor has Digges disclosed that the Maryland order found that the

offering involved fraud.

-16-

## COUNT I — UNREGISTERED OFFERING OF SECURITIES

### Violations of Sections 5(a) and 5(c) of the Securities Act
### [15 U.S.C. §§ 77e(a) and 77e(c)]

62.    Paragraphs 1 through 61 are restated and incorporated herein by reference.

63.    No registration statement has been filed or is in effect with the Commission pursuant to the Securities Act and no exemption from registration exists with respect to the transactions described herein.

64.    From at least April 2003 through the present, defendants Digges, Nexstar, TMT Management, TMT Equipment, POSA and POSA TMT, singly and in concert, have:

   (a)    made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or otherwise;

   (b)    carried securities or caused such securities to be carried through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or for delivery after sale; and

(c)    made use of the means or instruments of transportation or

communication in interstate commerce or of the mails to offer to sell or

offer to buy securities, through the use or medium of any prospectus or

otherwise,

without a registration statement having been filed with the Commission as to such

securities.

65.    By reason of the foregoing, defendants Digges, Nexstar, TMT

Management, TMT Equipment, POSA and POSA TMT, directly and indirectly,

singly and in concert, have violated Sections 5(a) and 5(c) of the Securities Act

[15 U.S.C. §§ 77e(a) and 77e(c)].

## COUNT II – FRAUD

### Violations of Section 17(a) of the Securities Act
### [15 U.S.C. § 77q(a)]

66.    Paragraphs 1 through 61 are hereby realleged and are incorporated

herein by reference.

67.    Digges, Nexstar, TMT-Equipment, TMT-Management, POSA, and

POSA-TMT, in the offer and sale of the securities described herein, by the use of

means and instruments of transportation and communication in interstate commerce and by use of the mails, directly and indirectly,

(a) employed devices, schemes and artifices to defraud purchasers of such securities, all as more particularly described above;

(b) obtained money or property by means of untrue statements of material facts or omissions of material facts necessary in order to make the statements made, not misleading; and

(c) engaged in transactions, practices and a course of business which operated as a fraud or deceit upon the purchasers of such securities, all as more particularly described in the paragraphs above.

68.     In engaging in such devices, schemes and artifices to defraud Defendants Digges, Nexstar, TMT Equipment, TMT Management, POSA, and POSA TMT acted with scienter, that is, with an intent to deceive, manipulate or defraud or with a severe reckless disregard for the truth.

69.     By reason of the foregoing, the defendants Digges, Nexstar, TMT Equipment, TMT Management, POSA, and POSA TMT, directly and indirectly,

have violated and, unless enjoined, will continue to violate Section 17(a) of the

Securities Act [15 U.S.C. § 77q(a)].

## **COUNT III--FRAUD**

### **Violations of Section 10(b) of the Exchange Act**
### **[15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]**

70.    Paragraphs 1 through 61 are hereby realleged and are incorporated

herein by reference.

71.    From at least November 1, 2001 through the present, defendants

Digges, Nexstar, TMT Equipment, TMT Management, POSA, and POSA TMT, in

connection with the purchase and sale of securities described herein, by the use of

the means and instrumentalities of interstate commerce and by use of the mails,

directly and indirectly

a)    employed devices, schemes, and artifices to defraud;

b)    made untrue statements of material facts and omitted to state

material facts necessary in order to make the statements made, in light of the

circumstances under which they were made, not misleading; and

c)    engaged in acts, practices, and courses of business which

would and did operate as a fraud and deceit upon the purchasers of such securities,

-20-

all as more particularly described above.

72.    Defendants Digges, Nexstar, TMT Equipment, TMT Management,

POSA, and POSA TMT knowingly, intentionally, and/or recklessly engaged in the

aforementioned devices, schemes and artifices to defraud, made untrue statements

of material facts and omitted to state material facts, and engaged in fraudulent acts,

practices and courses of business.  In engaging in such conduct, the defendants

acted with scienter, that is, with intent to deceive, manipulate or defraud or with a

severe reckless disregard for the truth.

73.    By reason of the foregoing, defendants Digges, Nexstar, TMT

Equipment, TMT Management, POSA, and POSA TMT, directly and indirectly,

have violated and, unless enjoined, will continue to violate Section 10(b) of the

Exchange Act [15 U.S.C. 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-

5].

## COUNT IV—AIDING and ABETTING FRAUD

### Aiding and Abetting Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78m(a)] and Rule 10b-5 thereunder [17 C.F.R. §§ 240.10-b-5]

74.    Paragraphs 1 through 61 are hereby realleged and are incorporated

herein by reference.

-21-

75. From at least April 2003 through the present, Defendants Spin Drift, Televest Group and Televest Communications aided and abetted violations by Digges, Nexstar, TMT Equipment, TMT Management, POSA, and POSA TMT of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. Those primary violations occurred when, in connection with the purchase or sale of securities described herein, by the use of the means and instrumentalities of interstate commerce and by the use of the mails, directly and indirectly:

a) employed devices, schemes, and artifices to defraud;

b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

c) engaged in acts, practices, and courses of business which would and did operate as a fraud and deceit upon the purchasers of such securities, all as more particularly described in the paragraphs above.

76. Defendants Spin Drift, Televest Group and Televest Communications knowingly, intentionally, and/or recklessly provided substantial assistance to the aforementioned fraudulent conduct. While providing such assistance, defendants Spin Drift, Televest Group and Televest Communications

-22-

acted with scienter, that is, with intent to deceive, manipulate or defraud or with a severe reckless disregard of the truth and with full knowledge of the qrongding of the primary violators.

77.    By reason of the foregoing, defendants Spin Drift, Televest Group and Televest Communications directly and indirectly, have aided and abetted, and unless enjoined will continue to aid and abet, violations of Section 10(b) of the Exchange Act [15. U.S.C.§ 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Commission respectfully prays for:

I.

Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure, finding that the Defendants named herein committed the violations alleged herein.

II.

A temporary restraining order, preliminary and permanent injunctions enjoining the defendants Digges, Nexstar, TMT Equipment, TMT Management, POSA, and POSA TMT, Spin Drift, Televest Group and Televest

-23-

Communications, their officers, agents, servants, employees, and attorneys, and

those persons in active concert or participation with them who receive actual notice

of the order of injunction, by personal service or otherwise, and each of them,

whether as principals or as aiders and abettors, from violating, directly or indirectly,

Sections 5(a), 5(c) and 17(a) of the Securities Act, 15 U.S.C. 77e(a), 77e(c) and

77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. 78j(b), and Rule 10b-5 [17

C.F.R. 240.10b-5] promulgated thereunder.

### III.

An order requiring accountings by the Defendants and ordering them to

disgorge all ill-gotten gains or unjust enrichment, with prejudgment interest thereon,

to effect the remedial purposes of the federal securities laws, and an order freezing

the assets of the defendants and preserving documents, in order to preserve the

status quo.

### V.

An order pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)]

and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] imposing civil

penalties against Defendants.

VI.

An Order appointing a Receiver for the assets of defendants Nexstar; TMT

Equipment; TMT Management; POSA; POSA TMT; Televest; Televest Group;

and Spindrift.

VII.

An Order freezing the assets of Defendants Digges, Nexstar; TMT-E; TMT-

M; POSA; POSA TMT; Televest; Televest Group; and Spindrift.

VIII.

Such other and further relief as this Court may deem just, equitable, and

appropriate in connection with the enforcement of the federal securities laws and for

the protection of investors.

Dated: February 2, 2006                    Respectfully submitted,

William P. Hicks
District Trial Counsel
Florida Bar No. 0337641

M. Graham Loomis
Senior Trial Counsel
Georgia Bar No. 457868
**DESIGNATED TRIAL COUNSEL**

John G. Westrick
Staff Attorney
Georgia Bar No. 423430

Counsel for Plaintiff
Securities and Exchange Commission
3475 Lenox Road, N.E., Suite 1000
Atlanta, Georgia 30326-1232
Tel: (404) 842-7600
Fax: (404) 842-7679